380 S.E.2d 219

**COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR**

v.

**Stephen Dean SIX.**

**No. 18971.**

Supreme Court of Appeals of West Virginia.

April 21, 1989.

Jack M. Marden, Bar Counsel, The W.Va. State Bar, Cynthia Santoro Gustke, Asst. Disciplinary Counsel, W.Va. State Bar, Charleston, for Committee on Legal Ethics.

Richard Bush, Parkersburg, for Dean Six.

MILLER, Justice.

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar (Committee) against the respondent, Stephen Dean Six, an attorney licensed to practice law in this State. We adopt the Committee's recommendation and annul the respondent's license to practice law.

The respondent, on May 13, 1988, pled guilty in the Circuit Court of Ritchie County, West Virginia, to one count of felony embezzlement, Felony No. 87–F–3, and one count of breaking and entering, Felony No. 87–F–14A. He was sentenced to two consecutive terms of not less than one year and not more than ten years' incarceration in the West Virginia Penitentiary. The respondent was also ordered to make restitution and to pay the costs of the proceedings in Felony No. 87–F–14A.

█ The Committee contends that the respondent's convictions are violations of DR 1–102(A)(3), (4), and (6).[1] The respondent moves to dismiss the complaint. He states that on December 21, 1987, the West Virginia State Bar disbarred him from the practice of law in West Virginia for failure to pay bar dues for the year 1987 and, therefore, the matter of disbarment is moot. We disagree.

Under the provisions of Article III, Section 4 of the By–Laws of the West Virginia State Bar, nonpayment of dues results in the suspension of a lawyer's license to practice law. However, reinstatement under Article III, Section 5 is automatic once all accrued fees and penalties have been paid.[2] Consequently, this suspension does not serve to provide the same degree of punishment as sought by the Committee in this case and, therefore, is not controlling.

Initially, we note the general rule with regard to the Committee's burden of proof, as set out in Syllabus Point 1 of *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987):

"'In a court proceeding initiated by the Committee on Legal Ethics of the West Virginia State Bar to annul the license of an attorney to practice law, the burden is on the Committee to prove, by full, preponderating and clear evidence, the charges contained in the Committee's complaint.' Syl. Pt. 1, *Committee on Legal Ethics v. Pence*, [W.Va.] 216 S.E.2d 236 (W.Va.1975)."

Where, as here, there has been a final criminal conviction, we have held that proof on the record of such conviction satisfies the Committee's burden of proving an ethical violation arising from such conviction. *In Re Smith*, 158 W.Va. 13, 206 S.E.2d 920 (1974); *In Re Brown*, 157 W.Va. 1, 197 S.E.2d 814 (1973); *In Re Berzito*, 156 W.Va. 201, 192 S.E.2d 227 (1972). *See also* W.Va. State Bar By–Laws Article VI, Section 23.[3] Moreover, under Article VI, Sec-

1. Our Rules of Professional Conduct, effective on and after January 1, 1989, are not applicable to this proceeding. The applicable rule, DR 1–102(A) of the Code of Professional Responsibility, provides, in pertinent part:

"A lawyer shall not:
  *    *    *    *    *    *
"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
  *    *    *    *    *    *
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

2. The relevant portions of Article III, Sections 4 and 5 of the Bar By–Laws are:

§ 4: "If a member remains in default for thirty days after the date of mailing the notice provided by the preceding section [§ 3], he shall be automatically suspended from active membership in the state bar and shall not further engage in the practice of law until he has been reinstated."

§ 5: "Whenever a member suspended solely for nonpayment of membership fees shall have paid all accrued fees and penalties he shall be automatically reinstated[.]"

3. The relevant portion of Article VI, Section 23 of the By–Laws provides:

"The license of any attorney shall be annulled and such attorney shall be disbarred upon proof that he has been convicted—(a) of any crime involving moral turpitude or professional unfitness; or (b) of receiving money for his client as his attorney and failing to pay the same on demand, or within six months after receipt thereof, without good and sufficient reason for such failure, as in the statute provided."

tion 25 of the Bar By–Laws, the conviction is deemed proved by "a certified copy of the order or judgment of conviction." This complies with Rule 1005 of the West Virginia Rules of Evidence.[4] *See Committee on Legal Ethics v. Lewis*, 179 W.Va. 595, 371 S.E.2d 92 (1988).

We note that DR 1–102(A)(3) speaks only to the prohibition that "a lawyer shall not engage in illegal conduct involving moral turpitude" and does not provide a disciplinary penalty. It is clear, however, that under Article VI, Section 23 of the By–Laws, an "attorney shall be disbarred upon proof that he has been convicted ... of any crime involving moral turpitude or professional unfitness." We have consistently adhered to this position as evidenced by the single Syllabus of *In Re Smith:*

> " 'Section 23, Part E, Article VI of the By–Laws of the West Virginia State Bar imposes upon any Court before which an attorney has been qualified a mandatory duty to annul the license of such attorney to practice law upon proof that he has been convicted of any crime involving moral turpitude.' Point 2, syllabus, *In The Matter of Mann*, 151 W.Va. 644 [154 S.E.2d 860]." [5]

*See also Committee on Legal Ethics v. Graziani*, 157 W.Va. 167, 200 S.E.2d 353 (1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974); *In Re Robertson*, 156 W.Va. 463, 194 S.E.2d 650 (1973); *In Re West*, 155 W.Va. 648, 186 S.E.2d 776 (1972); *In Re Trent*, 154 W.Va. 333, 175 S.E.2d 461 (1970).

The issue in this proceeding is whether the offenses of embezzlement and breaking and entering are crimes involving moral turpitude. Although "moral turpitude" is an elusive concept incapable of precise definition, it is generally described as importing "an act of baseness, vileness or depravity in the duties which one person owes to another or to society in general, which is contrary to the usual, accepted and customary rule of right and duty which a person should follow." Syllabus Point 2, in part, *Committee on Legal Ethics v. Scherr*, 149 W.Va. 721, 143 S.E.2d 141 (1965). *See generally* 7 Am.Jur.2d *Attorneys at Law* § 74 (1980). "Moral turpitude" has also been defined as any conduct that is "contrary to justice, honesty and good morals." *In Re Smith*, 158 W.Va. at 17, 206 S.E.2d at 923.

Whether a crime is one of moral turpitude is determined from the nature and elements of the offense itself and from the facts and circumstances giving rise to the conviction. *Matter of Mann*, 151 W.Va. 644, 154 S.E.2d 860 (1967). We have recognized, for example, that where fraud or a fraudulent intent is an essential element of the offense, the crime is one of moral turpitude *per se. In Re Smith, supra; In Re West, supra; Matter of Mann, supra.* Crimes which involve corruption of the legal system or perversion of justice have been held to involve moral turpitude as a matter of law. *In Re Brown, supra; In Re Barron*, 155 W.Va. 98, 181 S.E.2d 273 (1971). Moral turpitude has also been held to be inherent in crimes involving intentional dishonesty or illegal activity for personal gain or other corrupt purpose. *See In Re Strick*, 34 Cal.3d 891, 196 Cal.Rptr. 509, 671 P.2d 1251 (1983); *Matter of Grimes*, 414 Mich. 483, 326 N.W.2d 380 (1982); *In Re Conduct of Chase*, 299 Or. 391, 702 P.2d 1082 (1985); *Searcy v. State Bar of Texas*, 604 S.W.2d 256 (Tex.Civ.App.1980). *See generally* 7 C.J.S. *Attorney and Client* § 67 (1980).

---

**4.** Rule 1005, W.Va.R.Evid., as applicable here, states:

> "**Public Records.** The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original."

**5.** While the Syllabus of *Smith* uses the term "annul the license," it is clear under Article VI,

Section 35 of the Bar By–Laws that disbarment of an attorney and annulment of his license are two ways of expressing the same form of punishment. "The annulment of a license to practice law ... shall constitute a disbarment." Annulment relates to the license and disbarment refers to the individual. Under Section 35, after a five-year period, an application may be made for reinstatement. *See In Re Brown*, 164 W.Va. 234, 262 S.E.2d 444 (1980).

Embezzlement is generally held to be among those offenses which involve moral turpitude as a matter of law. *See In Re Lyons,* 15 Cal.3d 322, 124 Cal.Rptr. 171, 540 P.2d 11 (1975); *People v. Bell,* 150 Colo. 245, 372 P.2d 436 (1962); *In Re Patt,* 81 Ill.2d 447, 43 Ill.Dec. 737, 410 N.E.2d 870 (1980); *In Re Shumate,* 382 S.W.2d 405 (Ky.1964); *In Re Sutton,* 213 Minn. 76, 5 N.W.2d 396 (1942); *Matter of McDonnell,* 91 N.J. 404, 451 A.2d 188 (1982); *Office of Disciplinary Counsel v. Nothstein,* 21 Ohio St.3d 108, 21 O.B.R. 400, 488 N.E.2d 180 (1986); *In Re Wallis,* 63 Wash.2d 833, 389 P.2d 421 (1964).

While we did not use the term "embezzlement" simply because there had been no criminal conviction, it appears from Syllabus Point 3 of *Committee on Legal Ethics v. White,* 176 W.Va. 753, 349 S.E.2d 919 (1986), that an embezzlement was involved:

" 'Detaining money collected in a professional or fiduciary capacity without bona fide claim coupled with acts of dishonesty, fraud, deceit or misrepresentation justify annulment of an attorney's license to practice law.' Syllabus Point 5, *Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 240 S.E.2d 668, 93 A.L.R.3d 1046 (1977)."

*See also Committee on Legal Ethics v. Lewis, supra.* The essence of embezzlement is receipt of money in a trust relationship and conversion of it to his own use. *See* Syllabus Point 1, *State v. Frasher,* 164 W.Va. 572, 265 S.E.2d 43 (1980); *see generally* 26 Am.Jur.2d *Embezzlement* § 1 (1966).

■ Here, the respondent had taken money from his clients' accounts and converted it to his own use.[6] The embezzlement conviction being final and constituting a crime of moral turpitude, we find the Committee met its burden of proof. We need not decide whether the respondent's conviction for breaking and entering involves a crime of moral turpitude. At the very least, it violates DR 1–102(A)(6), as it is "conduct that adversely reflects on his fitness to practice law." This violation, coupled with the embezzlement conviction, clearly warrants the annulment of his license.

In his brief, the respondent requests that the date of his annulment be fixed on April 24, 1987, the date he filed a Petition for

---

6. The respondent had been indicted on fourteen felony charges in the circuit court and, by virtue of a plea bargain agreement, had entered guilty pleas on two of the felony charges. The final sentencing order entered on July 12, 1988, contains this statement:

"[T]he State advised the Court of the nature and extent of Stephen Dean Six's involvement in the following crimes: 1. Perjury in trial of Stephen Dean Six; 2. Perjury in trial of Larry Husk; 3. Perjury in trial of Robert Husk; 4. Embezzlement from Burdine Estate; 5. Embezzlement from Elder Estate; 6. Embezzlement from estate of family in Berea; 7. Burglary of two Layfield houses in Cairo; 8. Grand Larceny of Lion's Club punch bowl; 9. Concealment of goods stolen in burglary of Stanberry; 10. Concealment of goods stolen in burglary from Baker Estate; 11. Burglary of McCullough; 12. Breaking and entering of Hills and Hollows; 13. Burglary of Stonestreet; 14. Burglary of Vesta Crane; 15. Concealment of oilers stolen from Haught Oil Co.; 16. Concealment of oilers stolen from Pennzoil; 17. Breaking and entering of Mountwood; 18. Grand larceny of prints from North Bend State Park; 19. Grand Larceny of Fenton Glass from North Bend State Park; 20. Breaking and entering of Mahone General Store; 21. Receiving stolen goods from burglary of Chenfrock; 22. Burglary of Judge Gene Cambell's; 23. Burglary of Nelly Findley; 24. Concealing goods stolen in Maple burglary; 25. Grand Larceny of Schrader Music Box; 26. Receiving goods stolen from Riverview Antiques; 27. Concealing goods stolen from Williamstown Antique Mall; 28. Concealing goods stolen from June Stout; 29. Burglary of apartment of Darwin Drain; 30. Breaking and entry of County Store; 31. Embezzlement from Country Cupboard; ... 33. Grand larceny of plates from Whitlach Studioes; 34. Several shop liftings not named; 35. Breaking and entering of Senior Citizens Center; 36. Grand larceny from Antiques on the Mall; 37. Burglary of Tommy Davis; 38. Concealing goods stolen from Halls; 39. Burglary of Mabel Frazier; ... 41. Burglary of Valentine/Metz Estate; 42. Grand Larceny of knife collection of Fred Goff; 43. Burglary of house on Route 50; 44. Burglary of house near Pennsboro; 45. Burglary of Treve Britton House; 46. Receipt of quilts stolen by Larry Husk; 47. Receipt of goods stolen from Charlie Wade; and 48. Theft of three German Set prints in Morgantown.

"The Court then inquired of the defendant if he had anything further to say. The defendant and [his counsel] advised the Court that they had nothing further to say."

Resignation pursuant to Article VI, Section 33 of the By–Laws.[7] He states that he has not practiced law since this date. We did not act on his petition and dismissed it as moot by order of December 30, 1988, in view of the pending disciplinary case. It is apparent that if the date of his license annulment is moved back to April 24, 1987, his time for applying for readmission, which is five years from the date of annulment under Article VI, Section 35 of the By–Laws, will be advanced. In view of the seriousness of the offenses, we decline to grant the respondent's request.

The Committee has requested that the respondent reimburse it for its expenses incurred in this proceeding. This request is granted pursuant to Article VI, Section 20 of the By–Laws. Accordingly, and for the foregoing reasons, the license of Stephen Dean Six to practice law in this State is hereby annulled.

License annulled.

---

7. Article VI, Section 33 of the Bar By–Laws provides a procedure for voluntary resignation by way of a petition to this Court. If the attorney has pending disciplinary or criminal charges, a mechanism is provided for a hearing. The final decision rests in this Court to "grant or refuse to grant the prayer of the petition upon such terms and conditions as it may deem advisable."