401 S.E.2d 248

## The COMMITTEE ON LEGAL ETHICS OF The WEST VIRGINIA STATE BAR

v.

## John S. FOLIO, a Member of the West Virginia State Bar.

### No. 19698.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1990.

Rehearing Denied Feb. 6, 1991.

---

Cynthia Santoro Gustke, Sherri D. Goodman, The West Virginia State Bar, Charleston, for Committee on Legal Ethics of The WV State Bar.

John Lewis Marks, Jr., Clarksburg, for John S. Folio.

WORKMAN, Justice:

In this disciplinary proceeding, the Committee on Legal Ethics of the West Virginia State Bar ("the Committee") recommends that we annul the license to practice law of John S. Folio. Mr. Folio was convicted in the United States District Court for the Northern District of West Virginia of conspiracy to obstruct justice. The Committee

**1.** Rule 8.4(b) to (d) of the West Virginia Rules of Professional Conduct provide as follows:

It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonest[y], fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]

**2.** The actions of the respondent allegedly involved attempts to interfere with the testimony of individuals appearing before a grand jury during its probe of Carl Lee Gallo. Mr. Gallo, of Clarksburg, West Virginia, was being investigated due to his alleged involvement in criminal cocaine offenses.

maintains that the respondent is guilty of professional misconduct and has violated Rule 8.4(b) to (d) of the West Virginia Rules of Professional Conduct.[1] The respondent contends that the facts surrounding his conviction do not warrant annulment of his license to practice law and further contends that he is entitled to an evidentiary hearing in which mitigating factors may be developed. We disagree with the respondent and hereby order the annulment of the respondent's license to practice law in the State of West Virginia.

The respondent has engaged in the practice of law in Clarksburg, West Virginia, since his admission to practice law on June 1, 1971. He was indicted on January 31, 1984, in the United States District Court for the Northern District of West Virginia and charged with five counts of criminal conduct.[2] During a trial conducted from June 4 through 12, 1984, a judgment of acquittal was entered on one count of obstruction of justice by the district court at the close of the government's case. The jury subsequently found the respondent not guilty of three obstruction of justice counts. The jury did, however, find the respondent guilty of one felony count of conspiracy to obstruct justice ("conspiracy to violate 18 U.S.C. § 1512 (1985) by using intimidation, physical force, and threats and by engaging in misleading conduct with intent to influence and attempt to influence testimony in an official proceeding, in violation of 18 U.S.C. § 371 (1966)").[3]

**3.** The pertinent portions of 18 U.S.C. § 1512, as they appeared during the relevant time period, provided as follows:

Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—(1) influence the testimony of any person in an official proceeding; ... shall be fined not more than $250,000 or imprisoned not more than ten years, or both.
The conspiracy charge is based upon 18 U.S.C. § 371 which provides as follows:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each

On October 23, 1984, the Honorable Robert Maxwell of the United States District Court for the Northern District of West Virginia granted the respondent's Motion for Judgment of Acquittal on the conspiracy to obstruct justice charge, reasoning that insufficient evidence had been presented to sustain a guilty verdict. Upon appeal, the United States Court of Appeals for the Fourth Circuit reinstated the guilty verdict, by order dated July 11, 1985. *See U.S. v. Folio,* 767 F.2d 914 (4th Cir.1985) (unpublished opinion). After evidentiary hearings which revealed that exculpatory evidence known to the government had not been disclosed, the district court granted the respondent's motion for a new trial. Again, the government appealed to the Fourth Circuit, and the Fourth Circuit reversed the district court's award of a new trial. *See U.S. v. Folio,* 851 F.2d 357 (4th Cir.1988) (unpublished opinion). The respondent's application for a writ of certiorari from the judgment of the Fourth Circuit to the United States Supreme Court was denied by order dated November 7, 1988.

On May 29, 1990, the respondent was sentenced by Judge Maxwell to a term of probation for a period of two years, was fined $1,000.00, and was ordered to perform 100 hours of community service. Judge Maxwell also entered an order suspending the respondent's license to practice law for a period of ten days.

The Committee on Legal Ethics has instituted this disciplinary proceeding and contends that the respondent's license to practice law should be annulled based upon his conviction and his violation of Rule 8.4(b) to (d) of the West Virginia Rules of Professional Conduct.

■ " 'Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction.' Syllabus Point 2, *Committee on Legal Eth-*

*ics v. Six,* 181 W.Va. 52, 380 S.E.2d 219 (1989)." Syl. Pt. 1, *Committee on Legal Ethics v. Boettner, Jr.,* 183 W.Va. 136, 394 S.E.2d 735 (1990). However, as we recognized in Syllabus Point 2 of *Boettner,*

[a] license to practice law is a valuable right, such that its withdrawal must be accompanied by appropriate due process procedures. Where annulment of an attorney's license is sought based on a felony conviction under Article VI, Section 23 of the Constitution, By-laws, and Rules and Regulations of the West Virginia State Bar, due process requires the attorney be given the right to *request* an evidentiary hearing. The purpose of such a hearing is not to attack the conviction collaterally, but to introduce mitigating factors which may bear on the disciplinary punishment to be imposed. (emphasis added)

In the present case, the respondent filed a "Petition for Evidentiary Hearing in Mitigation of Disciplinary Action" with this Court on June 19, 1990. In his petition, the respondent requests an evidentiary hearing in order to introduce mitigating factors and circumstances which may bear on the disciplinary punishment to be imposed, including transcripts, exhibits, and testimony offered at his sentencing.

■ Although the *Boettner* case established the procedure for obtaining a mitigation hearing, no absolute right to a mitigation hearing in every disciplinary proceeding was created. A determination regarding the entitlement to an evidentiary hearing will be made by this Court on a case-by-case basis.

In *Boettner,* we granted the request for an evidentiary mitigation hearing because we believed that "a further hearing with a developed record [would] be beneficial in determining the appropriate disciplinary punishment." 183 W.Va. at 140, 394 S.E.2d at 739. In that case, Mr. Boettner had pled guilty to violation of 26 U.S.C. § 7201, making it a felony to wilfully evade

---

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

the payment of federal taxes. Mr. Boettner, a member of the West Virginia Senate and its majority leader during the time period in question, obtained a bank loan through the assistance of a lobbyist. The lobbyist and another individual made several interest payments on Mr. Boettner's loan directly to the bank. Mr. Boettner's failure to report these payments, qualifying as constructive income under the Internal Revenue Code, constituted income tax evasion. The unreported income would have increased his income tax liability from $8,456.00 to $10,033.00.

In Mr. Boettner's request for a mitigation hearing, he asserted that his financial situation and his extensive campaign debts required him to attempt to refinance his loans. Mr. Boettner based his request for a mitigation hearing, in substantial part, upon the need to present evidence regarding his financial distress and to explain the circumstances under which he attempted to refinance his loan. Mr. Boettner also requested a hearing in order to present evidence regarding the small amount of taxable income not reported, the negligent rather than wilfull nature of his actions, and his involvement in public service work. Based upon such considerations, we granted Mr. Boettner a mitigation hearing in order to develop facts relating to these issues.

We also recently granted a motion for a mitigation hearing in *Committee on Legal Ethics v. Leaberry*, No. 19800 (W.Va. Sup.Ct. of Appeals, November 1, 1990). In that case, the respondent, having pled guilty to federal charges involving failure to disclose all sources of income, had not yet been sentenced. He contended that facts relevant to mitigation would be disclosed in his presentence report at sentencing. Such disclosure, Leaberry maintained, would potentially present information serving as mitigation of the charges against him and would be beneficial to the determi-

nation of an appropriate disciplinary sanction to be imposed. We agreed and granted the evidentiary mitigation hearing.[4]

■ This court must make a final determination of the appropriate sanction in disciplinary proceedings instituted against attorneys in the state. The purpose of a mitigation hearing, in appropriate cases, is to provide this Court with the opportunity to obtain evidence in addition to that already contained in the record and to review facts which might mitigate in favor of an attorney. Thus, a mitigation hearing would be appropriate where this Court perceives circumstances surrounding the case, in the context of the unethical conduct, which might be sufficient to mitigate the disciplinary sanction. When this Court grants a mitigation hearing, however, there is certainly no guarantee of a mitigated sanction. It simply provides the attorney with the opportunity to present evidence which could potentially be considered as mitigatory.

■ The cases in which a mitigation hearing will be appropriate are the exception rather than the rule. Whether a mitigation hearing is appropriate in a particular instance will depend upon a variety of factors, including but not limited to, the nature of the attorney's misconduct, surrounding facts and circumstances, previous ethical violations, the wilfulness of the conduct, and the adequacy of the attorney's previous opportunity to present evidence sufficient for a determination of appropriate sanctions.

■ Furthermore, the Committee on Legal Ethics is charged with the duty of holding such hearings expeditiously. A mitigation hearing cannot be permitted to unreasonably delay these proceedings or to

---

**4.** As we stated in *Boettner,* "pending the outcome of the mitigation hearing, we retain the right to suspend temporarily the license of an attorney who has been convicted of a felony." 183 W.Va. at 140, 394 S.E.2d at 739. In *Leaberry,* the Committee on Legal Ethics made a motion to suspend Mr. Leaberry's license to prac-

tice law pending the mitigation hearing. We denied that motion by order dated December 13, 1990, due to Mr. Leaberry's express agreement to refrain from practicing law pending the outcome of the hearing. A motion to temporarily suspend the license to practice law was not made, however, in *Boettner.*

unnecessarily postpone the culmination of such proceedings.[5]

██ In the present case, we have reviewed the respondent's explanation of his actions and his defense as presented during the respondent's testimony at trial. We have also reviewed all other relevant testimony transcripts, orders, and motions as submitted to us by the respondent. The respondent has been convicted of one felony count of conspiracy to violate 18 U.S.C. § 1512 by using intimidation, physical force, and threats and by engaging in misleading conduct with intent to influence and attempt to influence testimony in an official proceeding, in violation of 18 U.S.C. § 371. This is a final conviction. The respondent's conduct not only constitutes a flagrant violation of Rule 8.4(b) to (d) of the Rules of Professional Conduct, but it also strikes at the very essence of the integrity of the legal system. No facts which might militate in favor of the respondent could do so sufficiently to mitigate the sanction of annulment. Thus, under these facts and circumstances, we fail to discern any purpose for such a hearing. The record in its present form provides an adequate basis upon which a final determination regarding disciplinary sanction can be made. We consequently deny the respondent's request for an evidentiary mitigation hearing.

██ Accordingly, we accept the recommendation of the Committee on Legal Ethics and order the annulment of the respondent's license to practice law in the State of West Virginia.

It is so ordered.

---

5. In the Committee's motion to disbar Mr. Leaberry pending his mitigation hearing, for instance, it is of concern that the Commission projected that a mitigation hearing would delay the proceedings against attorneys by approximately three months. Ethical violations committed by attorneys are a matter of great public concern. Proceedings instituted to sanction attorneys for violation should consequently be concluded with great dispatch.