490 S.E.2d 361

**OFFICE OF LAWYER DISCIPLINARY COUNSEL, Complainant**

**v.**

**William A. TANTLINGER, an Inactive Member of the West Virginia State Bar, Respondent.**

No. 23972.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided July 8, 1997.

Sherri D. Goodman, Chief Disciplinary Counsel, West Virginia State Bar Association, Charleston, for Complainant.

James B. McIntyre, McIntyre & Collias, Charleston, for Respondent.

PER CURIAM:

In this disciplinary proceeding, the Office of Disciplinary Counsel of the West Virginia State Bar (hereinafter "Disciplinary Counsel") recommends that we annul the law license of William A. Tantlinger. Mr. Tantlinger was convicted of two felony counts of embezzlement from a client. Disciplinary Counsel requests this Court to order the annulment of Mr. Tantlinger's law license, pursuant to Rule 3.18 of the Rules of Lawyer Disciplinary Procedure and further moves that the Court annul such license without a mitigation hearing. Mr. Tantlinger contends that the facts surrounding his conviction warrant additional investigation prior to annulment and requests a mitigation hearing. Based upon our review of the record and arguments of counsel, we find that a mitigation hearing is not appropriate in the present case, and we order the annulment of Mr. Tantlinger's law license.

I.

On July 18, 1996, Disciplinary Counsel requested suspension of Mr. Tantlinger's law

license based upon evidence that he had misappropriated settlement money from two different clients. Mr. Tantlinger thereafter placed himself on inactive status, and on August 22, 1996, the Investigative Panel of the Lawyer Disciplinary Board issued a Statement of Charges alleging that Mr. Tantlinger had misappropriated $75,000 of client funds in a medical malpractice matter instituted by Ms. Patricia Petry[1] and $6226.50 in a automobile accident matter instituted by Mrs. Linda Mullins.[2] On December 18, 1996, Mr. Tantlinger pleaded guilty to two felony counts of embezzlement, $53,000 in the Petry matter and $6,225.50 in the Mullins matter.

Pursuant to Rule 3.18[3] of the West Virginia Rules of Lawyer Disciplinary Procedure, Disciplinary Counsel requested this Court to annul Mr. Tantlinger's law license, and Mr. Tantlinger subsequently filed a request for a mitigation hearing. Disciplinary Counsel contends that Mr. Tantlinger is not entitled

---

1. In 1984, Mr. Tantlinger undertook the representation of Patricia Petry in a medical malpractice action against Dr. James Beddow. Subsequent to a judgment for plaintiff, Ms. Petry, the parties engaged in settlement negotiations due to Dr. Beddow's uninsured status. In December 1995, a settlement of $145,000, to be paid in installments, was reached. On December 28, 1995, a check for $60,000 was issued by Dr. Beddow's wife, payable to both Ms. Petry and Mr. Tantlinger. Mr. Tantlinger deposited that check in his trust account and wrote various checks from that account, including seven checks payable to himself, a check to the Internal Revenue Service for $25,000, and the payment of other debts owed by Mr. Tantlinger. From December 1995 through July 1996, Mr. Tantlinger misinformed Ms. Petry as to the status of the settlement payment. On July 16, 1996, Ms. Petry contacted the Office of Disciplinary Counsel regarding the difficulties she had encountered with Mr. Tantlinger. To this date, Mr. Tantlinger has not transferred to settlement money to Ms. Petry.

2. Mr. Tantlinger undertook representation of Linda Mullins and her husband subsequent to a 1993 vehicular accident. On June 28, 1996, Mr. Tantlinger obtained a check for $11,000 in settlement of the Mullins' claim. That check was deposited into Mr. Tantlinger's trust account on July 5, 1996, and during the following 11 days, Mr. Tantlinger wrote checks to himself and others, reducing the balance to $3,148. Mr. and Mrs. Mullins have not yet received their settlement money.

3. Rule 3.18 provides as follows:

(a) A lawyer who has been convicted of crime that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall, within thirty days of entry of the order of judgment of conviction, forward a copy of the order or judgment to the Office of Disciplinary Counsel. Failure to forward a copy shall constitute an aggravating factor in any subsequent disciplinary proceeding.

(b) Any court in which any lawyer shall be convicted of any crime that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall, as part of the judgment, direct its clerk to forward a certified copy of the order or judgment of conviction with the Office of Disciplinary Counsel.

(c) A plea or verdict of guilty or a conviction after a plea of nolo contendere shall be deemed to be a conviction within the meaning of this rule.

(d) A lawyer shall be deemed to have been convicted within the meaning of this rule upon the entry of the order or judgment of conviction and such lawyer's license may be suspended or annulled thereupon notwithstanding the pendency of an appeal from such conviction.

(e) Upon receipt of the order or judgment, which shall be conclusive evidence of the guilt of the crime or crimes of which the lawyer has been convicted, the Office of Disciplinary Counsel shall prepare formal charges to be filed with the Clerk of the Supreme Court of Appeals. The formal charge shall inform the lawyer of the right to file a written request for a mitigation hearing within thirty days of the date of the charge. Service of the formal charge shall be made in accordance with Rule 2.11.

(f) Mitigation hearings on formal charges of a conviction of crime reflecting adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall be conducted by a Hearing Panel Subcommittee of the Lawyer Disciplinary Board. Whether a mitigation hearing is warranted in a particular instance will depend upon a variety of factors, including but not limited to, the nature of the respondent's misconduct, surrounding facts and circumstances, previous ethical violations, the wilfulness of the conduct, and the adequacy of the respondent's previous opportunity to present evidence for a determination of appropriate sanctions. The procedure for such hearings shall be in accordance with the rules governing other lawyer disciplinary hearings. The Office of Disciplinary Counsel may introduce evidence of aggravating factors at any mitigation hearing. Unless the parties agree to an annulment of the lawyer's license to practice law, the matter will be referred to the Supreme Court of Appeals for disposition upon the report of a Hearing Panel Subcommittee of the Lawyer Disciplinary Board in accordance with the rules governing other · disciplinary matters.

to a mitigation hearing based on an absence of facts which might mitigate the sanction of disbarment. Disciplinary Counsel maintains that Mr. Tantlinger's conduct of stealing from his clients strikes at the very essence of the integrity of the legal system and further argues that a mitigation hearing is unnecessary to discover additional information concerning Mr. Tantlinger's actions. The record reveals Mr. Tantlinger's misdeeds, including embezzling the money, lying to his clients, and deceiving Disciplinary Counsel regarding the status of the settlement proceeds. Moreover, he has two felony convictions arising from this conduct. Disciplinary Counsel asserts that nothing demonstrated through a mitigation hearing could serve to reduce the appropriate sanction of disbarment.

Mr. Tantlinger, however, contends that a mitigation hearing is necessary to place the conduct, the charges, and the underlying circumstances in a context in which this Court can thoroughly review the emotional, physical, and psychological conditions existing at the time of Mr. Tantlinger's illegal activity. Mr. Tantlinger contends that although he recovered from the immediate speech and motor ability impairments caused by a stroke he suffered in 1990, he continued to experience emotional problems in the form of depression and anxiety. He contends that he did not seek diagnosis or treatment of these conditions because he did not understand them and was unwilling to concede that he was not fully capable of returning to the practice of law. On July 24, 1996, after the initiation of disciplinary investigations, Mr. Tantlinger sought psychiatric assistance from Dr. Edmund Settle. Dr. Settle diagnosed progressively worsening depression causing impairment in mood, energy, motivation, and concentration.

## II.

■ In syllabus point one of *Committee on Legal Ethics v. Pence,* 216 S.E.2d 236 (1975), we explained that "[i]n a court proceeding initiated by the Committee on Legal Ethics of the West Virginia State Bar to annul the license of an attorney to practice law, the burden is on the Committee to prove, by full, preponderating and clear evi-

dence, the charges contained in the Committee's complaint." Syllabus point two of *Committee on Legal Ethics v. Six,* 181 W.Va. 52, 380 S.E.2d 219 (1989), instructs that "[w]here there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction."

■ In syllabus point three of *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), we explained as follows:

A de novo standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

In syllabus point three of *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), we explained that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."

■ We were confronted with the issue of a mitigation hearing prior to annulment of a law license in *Committee on Legal Ethics of the West Virginia State Bar v. Boettner,* 183 W.Va. 136, 394 S.E.2d 735 (1990). In syllabus point two of *Boettner,* we stated that:

A license to practice law is a valuable right, such that its withdrawal must be accompanied by appropriate due process procedures. Where annulment of an attorney's license is sought based on a felony conviction under Article VI, Section 23 of the Constitution, By–Laws, and Rules and

Regulations of the West Virginia State Bar, due process requires the attorney be given the right to request an evidentiary hearing. The purpose of such a hearing is not to attack the conviction collaterally, but to introduce mitigating factors which may bear on the disciplinary punishment to be imposed.

■ Although *Boettner* "established the procedure for obtaining a mitigation hearing, no absolute right to a mitigation hearing in every disciplinary proceeding was created. A determination regarding the entitlement to an evidentiary hearing will be made by this Court on a case-by-case basis." *Committee on Legal Ethics v. Folio,* 184 W.Va. 503, 506, 401 S.E.2d 248, 251 (1990). In *Boettner,* we granted the request for an evidentiary mitigation hearing because "a further hearing with a developed record [would] be beneficial in determining the appropriate disciplinary punishment." 183 W.Va. at 140, 394 S.E.2d at 739. Mr. Boettner had pled guilty to tax evasion and asserted that his financial situation and his extensive campaign debts required him to attempt to refinance certain loans. Mr. Boettner also desired the opportunity to present evidence regarding the small amount of taxable income he failed to report, the negligent rather than wilful nature of his activity, and his involvement in public service work. 183 W.Va. at 138, 394 S.E.2d at 737.

■ In *Folio,* we explained:

This Court must make a final determination of the appropriate sanction in disciplinary proceedings instituted against attorneys in the state. The purpose of a mitigation hearing, in appropriate cases, is to provide this Court with the opportunity to obtain evidence in addition to that already contained in the record and to review facts which might mitigate in favor of an attorney. Thus, a mitigation hearing would be appropriate where this Court perceives circumstances surrounding the case, in the context of the unethical conduct, which might be sufficient to mitigate the disciplinary sanction.

184 W.Va. at 507, 401 S.E.2d at 252. In syllabus point three of *Folio,* we stated:

The cases in which a mitigation hearing will be appropriate are the exception rather than the rule. Whether a mitigation hearing is appropriate in a particular instance will depend upon a variety of factors, including but not limited to, the nature of the attorney's misconduct, surrounding facts and circumstances, previous ethical violations, the wilfulness of the conduct, and the adequacy of the attorney's previous opportunity to present evidence sufficient for a determination of appropriate sanctions.

We determined in *Folio* that all relevant information had already been provided. Mr. Folio had been convicted of one felony count of conspiracy to violate 18 U.S.C. Sec. 1512 by using intimidation, physical force, and threats and by engaging in misleading conduct with intent to influence and attempt to influence testimony in an official proceeding, in violation of 18 U.S.C. Sec. 371. 184 W.Va. at 505, 401 S.E.2d at 250. We found that "no facts which might militate in favor of the respondent could do so sufficiently to mitigate the sanction of annulment." *Id.* at 508, 401 S.E.2d at 253. Moreover, we concluded that "[t]he record in its present form provides an adequate basis upon which a final determination regarding disciplinary sanction can be made." *Id.* No other information was necessary to form the basis for our conclusion.

Rule 3.16 of the Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:

In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

■ Mr. Tantlinger embezzled funds from his clients. In so doing, he committed an illegal act to which he has pled guilty, and

he violated a trust which must be inherent in the attorney-client relationship. He did so knowingly, and he contrived schemes to deceive his clients into believing that he had not defrauded them. Our profession is founded, in part, upon the integrity of the individual attorney in his dealings with the public in general and his clients in particular. "Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor,* 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). In syllabus point two of *In re Daniel,* 153 W.Va. 839, 173 S.E.2d 153 (1970), we reasoned that "[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." *See Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986). In syllabus point five of *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989), we stated as follows:

> "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker,* [178 W.Va. 150], 358 S.E.2d 234 (1987).

██ While we sympathize with Mr. Tantlinger's physical and emotional obstacles, we remain unconvinced that they constitute issues which exculpate Mr. Tantlinger or otherwise mitigate the appropriate sanction for the violations he has committed. The record reflects systematic, intentional, wilful violations, and we find no justification for a mitigation hearing. Mr. Tantlinger's request for such hearing is consequently denied, and his law license is hereby annulled.

License Annulled.