507 S.E.2d 683

**LAWYER DISCIPLINARY
BOARD, Complainant,**

v.

**Steven M. ASKIN, a Member of the West
Virginia State Bar, Respondent.**

**OFFICE OF LAWYER DISCIPLINARY
COUNSEL, Petitioner,**

v.

**Steven M. ASKIN, an Inactive Member
of the West Virginia State Bar,
Respondent.**

Nos. 22684, 23313.

Supreme Court of Appeals of
West Virginia.

Submitted March 24, 1998.

Decided July 15, 1998.

Sherri D. Goodman, Esq., Chief Lawyer Disciplinary Counsel, Charleston, West Virginia.

Michael C. Allen, Esq., Charleston, West Virginia, Attorney for Steven M. Askin.

## PER CURIAM: [1]

In consolidated but unrelated cases regarding appropriate discipline for attorney Steven M. Askin, this Court has been requested to annul Mr. Askin's law license based upon his criminal contempt conviction and to impose sanctions based upon Mr. Askin's failure to maintain complete records of trust account monies, commingling funds, and failure to pay client money in his possession promptly to an investigator. Upon review of the record and the arguments of counsel, we adopt the recommendations regarding discipline.

### I. CRIMINAL CONTEMPT

During a 1994 trial of Mr. Mark McNulty in Federal District Court, Northern District of West Virginia, Mr. Askin was called as a witness [2] to testify concerning

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

2. Mr. Askin had initially appeared as counsel for one of the codefendants, Robin Brumbaugh, and was disqualified as defense counsel when it became apparent that the government intended to call Mr. Askin as a witness. Mr. Askin allegedly used cocaine with his clients and counseled them regarding the avoidance of detection. The government issued a subpoena to Mr. Askin in April 1994, and Mr. Askin moved to suppress material obtained through government interception of telephone conversations between Mr. Askin and Ms. Brumbaugh. Mr. Askin's motion was based upon attorney-client privilege and violation of

Mr. Askin's rights under the Fourth Amendment through the warrantless interception of telephone conversations. The district court denied the motion to suppress, and the Fourth Circuit Court of Appeals upheld that determination in *In re Askin*, 47 F.3d 100 (4th Cir.1995), *cert. denied*, 516 U.S. 944, 116 S.Ct. 382, 133 L.Ed.2d 305 (1995), finding that Mr. Askin lacked just cause to refuse to testify. Subsequent to the telephone conversations at issue in this matter, Congress amended provisions regarding interception of telephone conversations, and Mr. Askin's conversations apparently would have been protected under the amended statute. In determining Mr. Askin's just cause for refusal to testify, however, the Fourth Circuit applied the law in effect at the time of the conversations in question.

cocaine transactions with defendants, two of whom had been his clients. Mr. Askin refused to answer questions despite the court's grant of immunity. Mr. Askin was thereafter charged with criminal contempt for refusal to answer, and he pled guilty to one count of criminal contempt on May 22, 1995. He was sentenced to seven months incarceration, to be followed by three years of supervised release.[3]

The Office of Disciplinary Counsel (hereinafter "ODC") found that Mr. Askin had been convicted of a crime reflecting adversely on his honesty, trustworthiness, or fitness as a lawyer within the meaning of Rule of Lawyer Disciplinary Procedure 3.18(a)[4] and Rule of Professional Conduct 8.4(b)[5]; that Mr. Askin illegally used cocaine, participated in criminal conduct with his clients, placed his own interests before those of his clients, and engaged in contumacious behavior before the United States District Court.

This Court granted Mr. Askin's request for a mitigation hearing; however, in lieu of an evidentiary hearing, the parties submitted documents and deposition testimony. Mr. Askin introduced the testimony of five lawyers, indicating Mr. Askin's reputation as an excellent criminal defense lawyer. Subsequent to the mitigation hearing, the ODC recommended the annulment of Mr. Askin's law license, effective January 30, 1996, supervised practice for two years should Mr. Askin seek reinstatement, and the payment of costs of disciplinary proceedings.

■■■ In syllabus point two of *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989), we explained that "[w]here there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." *See also Office of Lawyer Disciplinary Counsel v. Tantlinger*, 200 W.Va. 542, 490 S.E.2d 361 (1997). In syllabus point three of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), we stated:

A de novo standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Rule 3.16 of the Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:

In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actu-

---

**3.** During Mr. Askin's sentencing hearing on January 23, 1996, and January 24, 1996, discussions ensued regarding the appropriate punishment for the crime of criminal contempt under the Federal Sentencing Guidelines. The Guidelines directed the sentencing judge to locate the most analogous guideline based upon the seriousness of the individual act of contempt. In Mr. Askin's matter, the sentencing judge specified that this was the "commission of a felony and not a misdemeanor." The District Court specifically found that Askin had obstructed justice and committed a felony.

**4.** Rule 3.18(a) provides as follows: "A lawyer who has been convicted of crime that reflects adversely on the lawyer's honesty, trustworthi-

ness or fitness as a lawyer in other respects shall, within thirty days of entry of the order of judgment of conviction, forward a copy of the order or judgment to the Office of Disciplinary Counsel. Failure to forward a copy shall constitute an aggravating factor in any subsequent disciplinary proceeding." Rule 3.18(e) provides that the order or judgment shall be conclusive evidence of the guilt of the crime or crimes of which the lawyer has been convicted.

**5.** Rule 8.4(b) provides that "[i]t is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

al or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

■ In *Committee on Legal Ethics v. Folio,* 184 W.Va. 503, 401 S.E.2d 248 (1991), this Court emphasized that a conviction for conspiracy to obstruct justice "strikes at the very essence of the integrity of our legal system." 184 W.Va. at 508, 401 S.E.2d at 253. Mr. Askin's criminal contempt conviction likewise offends the essence of the integrity of the legal system. Mr. Askin contends that his conviction for criminal contempt should be considered a misdemeanor and was classified as a felony by the lower court only for purposes of sentencing. The classification of the crime is irrelevant for purposes of invoking Rule 3.18 of the Rules of Lawyer Disciplinary Procedure. The issue is simply, as expressed in the rule, whether the crime adversely reflects upon the lawyer's honesty, trustworthiness or fitness as a lawyer. Mr. Askin, despite his attempts to rationalize his behavior, overtly disobeyed an order of the United States District Court, and he thereafter pled guilty to criminal contempt. In the mitigation hearing, Mr. Askin made various contentions surrounding his conviction for criminal contempt, including the assertion that it should be treated only as a misdemeanor violation; that no finding was made that his failure to testify actually obstructed justice; that the ODC failed to prove that he used cocaine with clients;[6] that the sentencing judge did not find that he counseled his clients in avoiding detection; and that he did not exhibit a lack of candor.

■ In formulating appropriate sanctions for professional infractions, we have recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest

in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor,* 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). In syllabus point two of *In re Daniel,* 153 W.Va. 839, 173 S.E.2d 153 (1970), we reasoned that "[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." In syllabus point five of *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989), we stated as follows:

> "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker,* [178 W.Va. 150], 358 S.E.2d 234 (1987).

Based upon our review of the record and the arguments of counsel, we find that annulment is the proper sanction in this matter, and consistent with the recommendations of the ODC, we annul Mr. Askin's license to practice law and further order that Mr. Askin's practice be supervised for two years should he be granted reinstatement. Mr. Askin shall also pay the costs of the disciplinary proceedings against him.

## II. HEWETT COMPLAINT

■ In the separate matter, the Lawyer Disciplinary Board (hereinafter "Board") charges that Mr. Askin failed to maintain complete records of trust account monies, commingled funds, and failed to pay client money in his possession promptly to an investigator, in violation of Rule 1.15(a) of the West Virginia Rules of Professional Conduct.[7] Mr. Askin had been retained to rep-

---

6. Although Mr. Askin admitted using cocaine, he denied that he did so with his clients. We are unaware of any criminal convictions for drug-related crimes, and our determination in this matter is not based upon any allegations of drug abuse; it is founded solely upon Mr. Askin's conviction for criminal contempt.

7. Rule 1.15(a) of the West Virginia Rules of Professional Conduct provides as follows:
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained

resent Mr. Joseph Nazelrod in a murder prosecution, and Mr. Allen Hewett had been hired as a private investigator. Mr. Hewett subsequently filed an ethics complaint, alleging that Mr. Askin had failed to pay Mr. Hewett for the costs of the investigation despite the fact that Mr. Askin had already been paid by the client for the costs of the investigation by Mr. Hewett.

The Office of Disciplinary Counsel retained the services of accountant David Diehl to review Mr. Askin's records. The Board and Mr. Diehl found it extremely difficult to decipher Mr. Askin's methods of bookkeeping, handling client trust money, and paying expenses. By his own admission, Mr. Askin handled the payment of expenses by withdrawing money from the IOLTA[8] account and writing checks either to himself or to two other unidentified accounts. The checks often covered amounts attributable to more than one case or client. The Board found that "[n]either the accountant nor the Board could directly correlate money being withdrawn from the IOLTA account on Mr. Nazelrod's behalf and deposited in the corporate account with expense money paid out." The Board concluded that Mr. Askin "did not simply use the corporate account as a direct pass through."[9]

The Board requested that Mr. Askin be required to pay restitution of $1277.37 plus 10% annual interest calculated from May 1, 1994, to Mr. Hewett; that Mr. Askin's law license be suspended for six months beginning on January 30, 1996, the date upon which Mr. Askin placed himself on inactive status with the West Virginia State Bar; that

Mr. Askin submit to a plan for maintaining his IOLTA account; and that Mr. Askin pay the costs of proceedings against him.

Mr. Askin conceded that his failure to maintain his trust account and commingling of funds justified the recommended sanction. Based upon our review of this matter, we adopt the recommendations of the Board[10] and order the following: (1) Mr. Askin shall pay restitution of $1277.37 plus 10% annual interest calculated from May 1, 1994, to Mr. Allen Hewett; (2) Mr. Askin's law license shall be suspended for six months, said period running from January 30, 1996, the date upon which Mr. Askin placed himself on inactive status with the West Virginia State Bar; (3) Mr. Askin shall submit a plan for proper maintenance of the IOLTA account prior to reinstatement, should he ever seek and be granted such reinstatement; and (4) Mr. Askin shall pay the costs of the disciplinary proceedings against him.

## III. CONCLUSION

Based upon the foregoing, we adopt the recommendation of the ODC that the law license of Mr. Askin should be annulled based upon his criminal contempt conviction. We further adopt the recommendation of the Board that on the basis of Mr. Askin's failure to maintain his trust account, commingling of funds, and failure to pay the private investigator fee, Mr. Askin shall pay restitution as outlined above, he shall pay the costs of the disciplinary proceedings, he shall submit a plan for proper maintenance of the IOLTA account should he ever seek reinstatement,

in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

8. IOLTA is an acronym for Interest of Lawyer Trust Accounts.

9. The Board noted several inexplicable transactions from Mr. Askin's IOLTA account to his corporate account. For instance, when Mr. Askin transferred $1,000 of Mr. Nazelrod's money to his corporate account on April 15, 1991, he

did not immediately pay $1,000 worth of expenses.

10. We note parenthetically that this Court has had prior occasion to direct the Clerk of this Court to forward copies of all materials in *State v. Kilmer*, 190 W.Va. 617, 439 S.E.2d 881 (1993) to the Committee on Legal Ethics for further investigation concerning Mr. Askin's conduct in that matter which was before this Court. A Complaint in the *Kilmer* matter was received by the Board in April 1992, and the matter was closed without admonishment in April 1995. The Board has provided this Court with copies of approximately nineteen additional complaints against Mr. Askin, some of which have been closed with no admonishment.

and his law license shall be suspended for six months, as outlined above.

License Annulled.