382 S.E.2d 313

## COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR

v.

### James E. ROARK.

### No. 18996.

Supreme Court of Appeals of West Virginia.

June 8, 1989.

Jack M. Marden, West Virginia State Bar, Charleston, for Committee on Legal Ethics.

James McIntyre, Charleston, for James E. Roark.

MILLER, Justice:

This is a disciplinary proceeding brought against the respondent, James E. Roark, a licensed attorney. The Legal Ethics Committee of the West Virginia State Bar (Committee) urges that we uphold its recommendation to suspend Mr. Roark's license to practice law for three years, based on his plea of guilty to six counts of the

federal misdemeanor offense of possession of cocaine [1] in the United States District Court for the Southern District of West Virginia.[2] The Committee maintains that Mr. Roark is guilty of professional misconduct in violation of DR 1–102(A)(4), (5), and (6) of the Code of Professional Responsibility.[3]

The respondent admits the fact of these convictions,[4] but claims that the penalty recommended by the Committee is too harsh. The respondent first argues that the offense of possession of cocaine is not a crime involving moral turpitude and, therefore, a three-year suspension is not warranted. This argument misperceives the Committee's case, based on a charge of violating DR 1–102(A)(4), (5), and (6), which does not involve a moral turpitude issue. The moral turpitude prohibition is contained in DR 1–102(A)(3), which states that a lawyer shall not "[e]ngage in illegal conduct involving moral turpitude."

We pointed out in *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989), that a charge of illegal conduct involving moral turpitude triggers the penalty set out in Article VI, Section 23 of the By–Laws of the West Virginia State Bar, providing that an "attorney shall be dis-

barred upon proof that he has been convicted ... of any crime involving moral turpitude or professional unfitness." We set out in Syllabus Point 3 of *Six* our traditional rule:

> " ' "Section 23, Part E, Article VI of the By–Laws of the West Virginia State Bar imposes upon any Court before which an attorney has been qualified a mandatory duty to annul the license of such attorney to practice law upon proof that he has been convicted of any crime involving moral turpitude." Point 2, syllabus, *In the Matter of Mann*, 151 W.Va. 644 [154 S.E.2d 860].' Syllabus, *In Re Smith*, 158 W.Va. 13, 206 S.E.2d 920 (1974)."

The Committee, as we have previously pointed out, did not bring a moral turpitude charge. Thus, we have no occasion to consider whether the offenses here are crimes of moral turpitude. Moreover, the recommended penalty here is not an annulment of the respondent's license, but a three-year suspension.[5]

Furthermore, we made it clear in *Committee on Legal Ethics v. Higinbotham*, 176 W.Va. 186, 342 S.E.2d 152 (1986), that an attorney convicted of a crime that does not involve moral turpitude could

---

1. 21 U.S.C. § 844(a).

2. The guilty pleas were made pursuant to a plea agreement in which some twenty-four other counts in the indictment were dismissed. Mr. Roark was sentenced to serve a period of 179 days in the federal prison at Petersburg, Virginia and was placed on three years probation commencing upon his release from prison on August 1, 1988. He was also ordered to pay a $5,000 fine and resigned from the office of mayor of the City of Charleston.

3. DR 1–102 provides, in pertinent part:
   "(A) A lawyer shall not:
   *   *   *   *   *   *
   "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   "(5) Engage in conduct that is prejudicial to the administration of justice.
   "(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
   The ethical violations occurred prior to the adoption of the new Rules of Professional Conduct for lawyers which became effective on January 1, 1989. *See* W.Va.Code, Court Rules at 439 (1989). Consequently, the references are to

the prior Code of Professional Responsibility. *See* W.Va.Code, Court Rules at 365 (1988).

4. Recently, in Syllabus Point 2 of *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989), we stated: "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction."

5. We stated in note 5 of *Six*, 181 W.Va. at 54, 380 S.E.2d at 221:
   "While the Syllabus of *Smith* uses the term 'annul the license,' it is clear under Article VI, Section 35 of the Bar By–Laws that disbarment of an attorney and annulment of his license are two ways of expressing the same form of punishment. 'The annulment of a license to practice law ... shall constitute a disbarment.' Annulment relates to the license and disbarment refers to the individual. Under Section 35, after a five-year period, an application may be made for reinstatement. *See In Re Brown*, 164 W.Va. 234, 262 S.E.2d 444 (1980)."

nevertheless be suspended from the practice of law. *See also Committee on Legal Ethics v. Scherr,* 149 W.Va. 721, 143 S.E.2d 141 (1965). In *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987), we considered acts that were criminal in nature, even though not formally charged at the time of the disciplinary proceedings, and found them sufficient to annul the attorney's license.

The respondent's more novel claim is that because he was either the mayor of the City of Charleston or the prosecuting attorney of Kanawha County when these illegal acts occurred, his misconduct must be tested by DR 8–101, which relates to "Action as a Public Official." [6] He further argues that since he did not violate DR 8–101, the Committee was foreclosed from charging him under other Code sections, in effect asserting that DR 8–101 preempts all other sections of the Code where the respondent is a public official. This claim is not based on any case authority, but on the doctrine of *expressio unius est exclusio alterius,* which we defined in Syllabus Point 3 of *Manchin v. Dunfee,* 174 W.Va. 532, 327 S.E.2d 710 (1984): "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies."

We question the applicability of this rule to the Code of Professional Responsibility. The Code regulates a variety of separate subjects relating not only to the practice of law, but also to the general conduct of an attorney.[7] It cannot be said that the ex-

---

6. DR 8–101 provides:

"(A) A lawyer who holds public office shall not:

"(1) Use his public position to obtain, or attempt to obtain, a special advantage in legislative matters for himself or for a client under circumstances where he knows or it is obvious that such action is not in the public interest.

"(2) Use his public position to influence, or attempt to influence, a tribunal to act in favor of himself or of a client.

"(3) Accept any thing of value from any person when the lawyer knows or it is obvious that the offer is for the purpose of influencing his action as a public official."

7. A general view of the subjects can be gleaned from the topic headings to the Disciplinary Rules, many of which have multiple subparts. This does not include the Ethical Considerations, which are separate rules designed to flesh out the Disciplinary Rules:

DR 1–101—Maintaining Integrity and Competence of the Legal Profession.
DR 1–102—Misconduct.
DR 1–103—Disclosure of Information to Authorities.
DR 2–101—Publicity.
DR 2–102—Professional Notices, Letterheads and Offices.
DR 2–103—Recommendation of Professional Employment.
DR 2–104—Suggestion of Need of Legal Services.
DR 2–105—Limitation of Practice.
DR 2–106—Fees for Legal Services.
DR 2–107—Division of Fees Among Lawyers.
DR 2–108—Agreements Restricting the Practice of a Lawyer.
DR 2–109—Acceptance of Employment.
DR 2–110—Withdrawal from Employment.
DR 3–101—Aiding Unauthorized Practice of Law.
DR 3–102—Dividing Legal Fees with a Non–Lawyer.
DR 3–103—Forming a Partnership with a Non–Lawyer.
DR 4–101—Preservation of Confidences and Secrets of a Client.
DR 5–101—Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
DR 5–102—Withdrawal as Counsel When the Lawyer Becomes a Witness.
DR 5–103—Avoiding Acquisition of Interest in Litigation.
DR 5–104—Limiting Business Relations with a Client.
DR 5–105—Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.
DR 5–106—Settling Similar Claims of Clients.
DR 5–107—Avoiding Influence by Others Than the Client.
DR 6–101—Failing to Act Competently.
DR 6–102—Limiting Liability to Client.
DR 7–101—Representing a Client Zealously.
DR 7–102—Representing a Client Within the Bounds of the Law.
DR 7–103—Performing the Duty of Public Prosecutor or Other Government Lawyer.
DR 7–104—Communicating With One of Adverse Interest.
DR 7–105—Threatening Criminal Prosecution.
DR 7–106—Trial Conduct.
DR 7–107—Trial Publicity.
DR 7–108—Communication with or Investigation of Jurors.
DR 7–109—Contact with Witnesses.
DR 7–110—Contact with Officials.
DR 8–101—Action as a Public Official.
DR 8–102—Statements Concerning Judges and Other Adjudicatory Officers.

pression in any one topic is designed to exclude other designated topics. Furthermore, it is generally held that the *expressio unius* doctrine is limited to situations where the language clearly suggests a contrast between what is expressed and what is impliedly omitted. *Estate of Banerjee,* 21 Cal.3d 527, 147 Cal.Rptr. 157, 580 P.2d 657 (1978); *Wade v. Commonwealth,* 303 S.W.2d 905 (Ky.1957). *See* 73 Am.Jur.2d *Statutes* § 212 (1974); 2A Sutherland Stat. Constr. §§ 47.23–47.25 (4th ed. 1984). Here we do not find this to be the case.

■ It is apparent that DR 8–101 is designed to provide a special set of duties surrounding the lawyer's action as a public official and which relate specifically to his public office. *See Graf v. Frame,* 177 W.Va. 282, 352 S.E.2d 31 (1986). It cannot be read to cover or exclude all of the other disciplinary rules that a lawyer might violate when not acting as a public servant.

The design of the Code is such that while specific areas of concern are covered, there is also general disciplinary language in DR 1–102 to control a lawyer's personal misconduct. It is in this area that the charges against the respondent are rooted. Consequently, we hold that DR 8–101, relating to a lawyer's conduct as a public official, does not supplant the general prohibition against misconduct on the part of lawyers contained in DR 1–102.

We turn now to the proposed penalty. In Syllabus Point 2 of *Higinbotham, supra,* we spoke to our settled rule that rather than attempt to establish a schedule of punishment, we would make an individualized assessment:

" 'In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances [in each case], including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before

this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.' Syl. pt. 2, *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976)."

In Syllabus Point 3 of *Committee on Legal Ethics v. Walker, supra,* we outlined some of the major factors that should be considered in determining a disciplinary penalty:

"In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."

In mitigation of punishment, the respondent points to testimony before the Committee that he was an active member of a local church in Charleston and that he was elected to the church vestry and asked to remain even after his convictions. He worked in a church-sponsored program which provided meals to underprivileged citizens both before his guilty pleas and after his release from prison. Other witnesses testified that the respondent carried out his duties as mayor and as prosecuting attorney of Kanawha County with dedication and efficiency. These witnesses also indicated that the respondent's drug use was unknown to them, that he never appeared to be under the influence of any drugs, and that while prosecuting attorney, he never attempted to interfere with or influence the prosecution of drug offenders. Finally, in his testimony before the Committee, the respondent himself acknowledged the gravity of his offenses and his personal anguish and contrition over allowing these acts to occur.

■ The respondent also intimates that the fact he served a prison sentence, paid a

DR 8–103—Lawyer Candidate for Judicial office.
DR 9–101—Avoiding Even the Appearance of Impropriety.

DR 9–102—Preserving Identity of Funds and Property of a Client.

fine, and is now on probation should be considered as a mitigating circumstance. We rejected a similar contention in *Higinbotham,* where we stated: "These are punishments imposed by the criminal justice system and have no bearing on the appropriateness of disciplinary action undertaken to vindicate the high standards of conduct to which attorneys must adhere." 176 W.Va. at 190, 342 S.E.2d at 156.

■ The respondent also argues that his standing as a public official should not be considered as adding to the penalty. We disagree. In *Graf,* we made this observation: "[A]n attorney who is a public official is held to a high standard of conduct because of his or her (1) professional and (2) public trustee responsibilities." 177 W.Va. at 288, 352 S.E.2d at 38. We went on in *Graf* to quote from *Sanders v. Mississippi State Bar Ass'n,* 466 So.2d 891, 893 (Miss.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 133, 88 L.Ed.2d 109 (1985): " 'Lawyer insensitivity to ethical impropriety [or perceived ethical impropriety] is one of the primary sources of this lack of public confidence in the Bar. *The problem is exacerbated when ethical violations are committed by an attorney holding an important public office.'* " 177 W.Va. at 289, 352 S.E.2d at 38. (Emphasis added).

Ethical violations by a lawyer holding a public office are not frequently found in reported cases. It does appear, however, that in those cases where this matter has been considered, courts have uniformly viewed the lawyer's misconduct as more egregious because of the betrayal of the public trust attached to the office. *E.g., People v. Unruh,* 621 P.2d 948, 949 (Colo. 1980) ("[R]espondent's flagrant violation of the laws, which he took an oath to uphold and enforce as deputy district attorney, tends to discredit all law enforcement officers."); *Matter of Thomas,* 472 N.E.2d 609, 610 (Ind.1985) ("[W]e observe that the Respondent violated the very laws he was

obligated to enforce in his professional capacity as a Deputy Prosecutor."); *Sanders v. Mississippi State Bar Ass'n, supra;* Syllabus Point 15, *State ex rel. Nebraska State Bar Ass'n v. Douglas,* 227 Neb. 1, 416 N.W.2d 515 (1987), *cert. denied,* 488 U.S. 802, 109 S.Ct. 31, 102 L.Ed.2d 10 (1988) ("The conduct of a government attorney is required to be more circumspect than that of a private lawyer. Improper conduct on the part of a government attorney is more likely to harm the entire system of government in terms of public trust.").

Finally, the respondent cites *Committee on Legal Ethics v. Harman,* 179 W.Va. 298, 367 S.E.2d 767 (1988), where a young attorney delivered a small amount of marijuana to her client who was incarcerated in the county jail. She was allowed to plead guilty to the misdemeanor of conspiring to possess marijuana, was fined $500, and placed on one year probation. Thereafter, she voluntarily withdrew from the practice of law for over one year. She successfully completed her probation period and the Committee, in view of these facts, requested only that she be given a public reprimand. We agreed.

■ Here, the charges are of a more serious nature. In addition, there is the added element of a violation of the public trust. We believe the Committee's recommendation of a three-year suspension to be reasonable under all of the circumstances. It is well within the range of punishment accorded by other courts in narcotics cases. *See* Annot., 99 A.L.R.3d 288 (1980). In addition, we grant the Committee's request for the reimbursement by the respondent of its costs and expenses which amount to $570.98.[8]

Three-year suspension.

BROTHERTON, C.J., concurs, in part, and dissents, in part, and files a separate opinion.

---

**8.** Justice Margaret L. Workman did not participate in this case. Pursuant to the provisions of Article III, Section 8 of the West Virginia Constitution, Chief Justice Brotherton, with the approval of the remaining members of this Court, recalled retired Justice Fred H. Caplan, by order entered May 1, 1989.

BROTHERTON, Chief Justice, concurring in part, dissenting in part:

I concur with the majority opinion that James E. Roark was guilty of professional misconduct in violation of DR 1–102(A)(4), (5), and (6) of the Code of Professional Responsibility. I dissent, however, to that portion of the majority's opinion which adopts the Committee on Legal Ethics' recommendation of a three-year suspension of Mr. Roark's license to practice law.

A three-year suspension of a license to practice law under these circumstances might, and I emphasize might, be a proper punishment for a lawyer practicing in the private arena. That suspension, however, is insufficient for a lawyer who held the constitutional office of prosecuting attorney of Kanawha County. West Virginia Code § 7–4–1 (1984), provides that it is the prosecuting attorney's responsibility to "attend to the criminal business of this State ... and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender...." [1]

In failing to fulfill the duties prescribed by statute, Mr. Roark breached the trust which exists between an office holder and the citizens whom he represents. Such a violation is not only a breach of the public trust, but is also a tear in the fabric of our form of government. What value is government if we cannot trust our elected officials?

James E. Roark corrupted the office of prosecuting attorney in violation of the statute. Mr. Roark obtained cocaine from known drug dealers and obligingly turned a blind eye to their criminal activities. He socialized with drug dealers at a time when our schools and community were being inundated with drugs. This behavior was all the more unfortunate because citizens relied on Mr. Roark for prosecution and protection without realizing that his office had been compromised. Mr. Roark's lack of moral accountability was further evidenced by his indignant protests to the voters, to the press, and to anyone who would listen, that he had never used drugs, all the while maintaining, consistent with his "mad dog" image, that he was out to clean up crime in Kanawha County.

"Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws ... argues recreancy to his position and office and sets a pernicious example to the insubordinate and dangerous elements of the body politic." *Ex parte Wall*, 107 U.S. 265, 274, 2 S.Ct. 569, 576, 27 L.Ed. 552, 556 (1883).[2] Mr. Roark violated two sworn oaths, one taken when he was admitted to the practice of law and the other when he was elected prosecuting attorney for Kanawha County. Although the majority recognizes that ethical violations by a lawyer holding a public office are more egregious, its adoption of the Committee's recommended three-year suspension does not reflect this position. I believe the gravity of Mr. Roark's professional misconduct warrants the annulment of his license to practice law, resulting in disbarment in the State of West Virginia.[3] For these reasons, I dissent.

---

**1.** Only an attorney, duly licensed, is qualified to hold the office of prosecuting attorney. *State ex rel. Summerfield v. Maxwell*, 148 W.Va. 535, 135 S.E.2d 741 (1964).

**2.** For a discussion of the impact of substance abuse on the legal profession, *see generally, Lawyers and Cocaine: The Legal Profession Draws the Line*, 92 Dick.L.Rev. 717 (1988); *The Cocaine Impaired Lawyer*, 92 Dick.L.Rev. 615 (1988).

**3.** Section 23 of the State Bar Rules (1982) provides for the annulment of the license of an attorney upon conviction of a crime involving moral turpitude or professional unfitness, among other grounds. *See In re Robertson*, 156 W.Va. 463, 194 S.E.2d 650 (1973).

Although we recommend the maximum penalty, we note that the party would not necessarily be permanently disbarred. As the majority noted in footnote 5, section 35 of the State Bar Rules provides that five years after the date of

disbarment, the party is permitted to petition this Court for reinstatement.