495 S.E.2d 552

James E. ROARK, a suspended member of the West Virginia State Bar, Petitioner,

v.

LAWYER DISCIPLINARY BOARD, Respondent.

No. 23935.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1997.

Decided Oct. 24, 1997.

James B. McIntyre, McIntyre & Collias, Charleston, for Petitioner.

Amie L. Johnson, Lawyer Disciplinary Board, Charleston, for Respondent.

PER CURIAM:

This is a petition by a suspended attorney for reinstatement of his license to practice law pursuant to Rule 3.32 of the *Rules of Lawyer Disciplinary Procedure* [1996]. The petitioner was suspended in 1989 for three

years following a guilty plea to criminal charges.

After submitting his petition for reinstatement in December 1996, it was learned that the petitioner had been arrested in North Carolina in 1991, and that he had not informed the Lawyer Disciplinary Board ("Board") of this arrest in the reinstatement questionnaire nor did he include it in his petition for reinstatement. Initially the Board had not opposed petitioner's reinstatement. However, upon learning of the 1991 arrest, and upon further investigation by the Office of Disciplinary Counsel ("ODC"), the ODC recommended that the petitioner be suspended for an additional year.

Based upon our review of the petition, all matters of record, the briefs, and the argument of counsel, we order that the petitioner's license continue to be suspended until January 1, 1998, at which time the license may be reinstated after the payment of costs for these proceedings, and that the petitioner be subject to one year of supervised practice.

## I.

On June 8, 1989, the petitioner, James E. Roark, had his license to practice law in the State of West Virginia suspended for a period of three years. The suspension followed his pleading guilty to six counts of federal misdemeanor charges of possession of cocaine. *See Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989). Following these events, Mr. Roark moved to North Carolina where he was employed in several executive positions, including a position with the North Carolina Institute of Justice.

In November 1996, Mr. Roark submitted a reinstatement questionnaire to the Board, and in December 1996, he filed a petition for reinstatement in this Court in which he set forth his employment history, his civic activities and other pertinent events which had occurred following his suspension. The ODC filed its report with the Court in which it recommended that the petitioner's law license be reinstated without a hearing before the Board. However, several months after the report was filed, the ODC learned that the petitioner had been arrested in 1991 in North Carolina on charges of misdemeanor larceny and obstructing a police officer. The charges were later dismissed following the completion of community service hours. The petitioner failed to include this information in his application for reinstatement.

After learning of these events, the ODC filed with the Court a supplemental report and requested that the Court suspend its consideration of the petition until the ODC completed a more thorough background check of the petitioner within North Carolina. The ODC did confirm the 1991 incident but found nothing further. Because of petitioner's failure to provide the information relating to the 1991 incident in his petition for reinstatement, the ODC, in its oral argument, recommended that the Court suspend petitioner's license to practice law for an additional year.

## II.

The authority of the Supreme Court of Appeals to regulate and control the practice of law in West Virginia, including the lawyer disciplinary process, is constitutional in nature. *West Virginia Constitution,* Article VIII, section 3 [1974] provides, in part, that "[t]he court shall have power to promulgate rules ... for all of the courts of the State relating to ... practice and procedure, which shall have the force and effect of law."

■ The standard of review applicable to the discipline of lawyers is set forth in Syllabus Point 3 of *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995), in which we stated in part:

" 'A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment....' Syl. Pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994)." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

We have previously held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). This decision-making power in regard to suspensions and annulments is also exercised in cases where a suspended attorney seeks to have his or her license reinstated. In reviewing attorney discipline, and " '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the ... attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syllabus Point 5, in part, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

### III.

The record indicates that Mr. Roark was suspended for a period of three years, after which he was free to petition for reinstatement. Mr. Roark did not elect to file for reinstatement of his license until seven years after he was suspended. During the time while his license was suspended he held positions of trust and authority, mostly in the State of North Carolina. In the information provided to the ODC and in his petition for reinstatement to this Court, Mr. Roark suggested that he had been rehabilitated and that the facts warranted the reinstatement of his license to practice law. Further, the ODC did make such a recommendation.

However, during the pending reinstatement process it was discovered that less than two years after being suspended, Mr. Roark was arrested in North Carolina for two misdemeanor offenses. While both charges were eventually dismissed, this information was not included in his reinstatement questionnaire provided to the Board, or in his petition for reinstatement filed with this Court. Even though the matter had been dismissed, he was required to provide the information on the questionnaire.[1] However, following the 1991 arrest, Mr. Roark waited for over five years before petitioning for the reinstatement of his license to practice law, during which time Mr. Roark conducted himself in a professional manner.

The Court is satisfied there is sufficient evidence that the petitioner has demonstrated a course of conduct that enables the Court to conclude there is little likelihood the petitioner will engage in unlawful or unprofessional conduct once his license to practice law has been reinstated. However, this Court cannot allow individuals seeking admission or reinstatement to the Bar of West Virginia to avoid providing required information or to misrepresent the truth on their applications without sanction.[2]

The Court, therefore, imposes upon James E. Roark the following conditions to the reinstatement of his license to practice law in West Virginia:

1. Mr. Roark's license to practice law in the State of West Virginia shall remain suspended until January 1, 1998, at which time

---

1. Question number fourteen of the Questionnaire requests applicant to:

    Provide a statement showing the dates, general nature and ultimate disposition of every matter involving the issuance or pendency of a warrant, arrest or prosecution of the petitioner in any jurisdiction during the period of disbarment or suspension and the six (6) months preceding such period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecutors and trial judges.

2. Rule 8.1 of the *Rules of Professional Conduct* [1989] provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

    (a) knowingly make a false statement of material fact; or

    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

the license may be reinstated subject to the following additional conditions;

2. Mr. Roark, upon reinstatement to the West Virginia State Bar, shall be supervised for a period of one year by an attorney in good standing with the State Bar, subject to the approval of such attorney by the Subcommittee Hearing Panel of the Lawyer Disciplinary Board;

3. Mr. Roark must comply with the appropriate continuing legal education requirements prior to reinstatement; and

4. Mr. Roark shall pay all costs incurred in the investigation and hearing of this matter.

Continued suspension; reinstatement with supervised practice; and payment of costs.