IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**

**June 4, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0065

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

CHARLES C. AMOS,
Respondent

Lawyer Disciplinary Proceeding
No. 11-03-316

LICENSE TO PRACTICE LAW IN WEST VIRGINIA
SUSPENDED FOR SEVENTY-FIVE DAYS AND ADDITIONAL SANCTIONS

Submitted: May 7, 2014
Filed: June 4, 2014

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner

Paul E. Biser, Esq.
Fredeking, Fredeking & Biser Law
Offices
Huntington, West Virginia
Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.
JUSTICE BENJAMIN concurs, and reserves the right to file a concurring opinion.
JUSTICE KETCHUM, deeming himself disqualified, did not participate in the decision in this case.
JUDGE ALOI, sitting by special assignment.

**SYLLABUS BY THE COURT**

1. "A *de novo* standard applies to a review of the adjudicatory record made for the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's finding of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028 (1985).

3. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

4. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. Pt. 3, *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

5. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

6. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards

of the legal profession."  Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

       7.  "Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office."  Syl. Pt. 3, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

Per Curiam:

This matter is before this Court upon the findings and recommendations of the Hearing Panel Subcommittee ("Hearing Panel") of the Lawyer Disciplinary Board ("LDB") in a disciplinary proceeding brought against the respondent, Charles C. Amos ("Mr. Amos"). The proceeding was instituted by the complainant, the Office of Disciplinary Counsel ("ODC"), through its Statement of Charges. The ODC alleged that Mr. Amos engaged in misconduct arising out of his contact and communications with a represented party in a judicial proceeding in which Mr. Amos, as an assistant prosecuting attorney, represented the West Virginia Department of Health and Human Resources ("DHHR").

Following an evidentiary hearing, the Hearing Panel found that Mr. Amos had violated the West Virginia Rules of Professional Conduct in several respects and recommended that this Court impose a number of sanctions, including a public reprimand. Mr. Amos does not challenge the findings with respect to his ethical violations, and both he and the ODC urge this Court to adopt the Hearing Panel's recommended sanctions. After a careful review of the briefs, the argument of counsel, and the record submitted, this Court adopts the Hearing Panel's recommended sanctions, in part, finding that a seventy-five-day suspension of Mr. Amos's law license is an appropriate sanction, rather than the public reprimand recommended by the Hearing Panel.

## I.  Factual and Procedural History

1

On January 17, 2013, the LDB through the ODC issued its Statement of Charges against Mr. Amos, a member of the West Virginia State Bar since 1982. The Statement contained one count, which alleged that Mr. Amos had violated Rule 1.7[1] and Rule 8.4(b), (c), (d) and (e)[2] of the Rules of Professional Conduct due to his contact with and actions toward Ms. C., a respondent parent in a child abuse and neglect proceeding.[3] Ms. C.

---

[1]Rule 1.7 states, in relevant part, as follows:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[2]Rule 8.4 states, in pertinent part, as follows:

> It is professional misconduct for a lawyer to:
> * * * *
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice;
> (e) state or imply an ability to influence improperly a government agency or official[.]

[3]Because the instant disciplinary proceeding involves a respondent parent in an abuse and neglect proceeding, we follow our practice in cases involving sensitive matters by using

(continued...)

2

was represented by lawyer Derek W. Marstellar, and Mr. Amos, as the assistant prosecutor, represented the DHHR in that proceeding.[4] Our recitation of the events that gave rise to this disciplinary proceeding is taken from the record before this Court, including the ODC's Statement of Charges and the transcript of the evidentiary hearing held before the Hearing Panel Subcommittee ("Hearing Panel") of the LDB.

In June of 2011, during the pendency of an abuse and neglect proceeding that had been brought against Ms. C, Mr. Amos was patronizing a local bar one evening when he saw Ms. C. and invited her to join his table of friends. After having drinks together, Mr. Amos took Ms. C. to another bar that same evening, one that featured nude female dancing. During the course of the evening, they discussed her abuse and neglect proceeding and, at the conclusion of the evening, Mr. Amos drove Ms. C. home where she allowed him to view her children's bedrooms upon his request. Over the course of the next couple of weeks, they exchanged text messages related to the abuse and neglect proceeding, but they had no further "in person" contact.[5]

---

[3](...continued)
the last initial of the parent's name. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990); *see also* W.Va. R. App. P. 40(e)(1).

[4]Mr. Amos had served as an assistant prosecutor for seventeen years working primarily on abuse and neglect cases.

[5]The record reflects that prior to this contact, Mr. Amos was driving when he saw Ms. C. walking along a highway and gave her a ride home. There was one other person in Mr. Amos's vehicle at the time.

Upon returning from vacation later in June 2011, Mr. Amos removed himself from the abuse and neglect proceeding without having appeared in any court proceeding involving Ms. C. after his out-of-court contact with her. He also reported his misconduct to the presiding circuit court judge, the Honorable Darrell Pratt, on or about June 23, 2011, and to the Prosecuting Attorney, Thomas Plymale, the following day, June 24.

In light of Mr. Amos's disclosure, Prosecutor Plymale met with Ms. C. and her lawyer, Mr. Marstellar, along with representatives from the DHHR,[6] on or about June 28, 2011. During this meeting, Ms. C. reportedly stated that while in the first bar with Mr. Amos, he rubbed his hand on her thigh and stated, "[i]f you scratch my back, I'll scratch yours," which she interpreted to mean that he expected sexual favors in exchange for helping her with the abuse and neglect case; that Mr. Amos again rubbed his hand on her thigh while they were at the strip club that same evening and told her he wanted to see her regain custody of her children, advised on how she could improve her case, and requested that she have sex with him;[7] that Mr. Amos kissed her twice on the cheek during the evening; that they texted

---

[6]The record contains the testimony of Christy Wright, the DHHR case worker assigned to Ms. C.'s abuse and neglect case. Ms. Wright testified that when Ms. C. conveyed information regarding her contact with Mr. Amos, Ms. C. appeared very nervous, genuine, and upset.

[7]Ms. C. stated that she told Mr. Amos that "it was her time of the month," but that when he drove her home, he again requested sexual favors, which she again declined.

4

one another over the next couple of weeks;[8] and, that on June 23, 2011, Mr. Amos telephoned her and requested that she "keep low and pretend she doesn't know what they're talking about."[9]

On or about June 29, 2011, Prosecutor Plymale advised Mr. Amos that he needed to resign his position as an assistant prosecutor and self report to the ODC. Mr. Amos did both.[10] Thereafter, this disciplinary proceeding ensued.

On May 6, 2013, a hearing was held before the Hearing Panel. Mr. Amos testified and admitted the allegations against him with the exception that he emphatically denied touching Ms. C. or asking her for sexual favors. He conceded that during the course of the evening, he discussed the abuse and neglect proceeding with her and the progress she was making in her effort to regain custody of her children. He also conceded that he drove her to her home where he asked to see her children's bedrooms, which she allowed, and that

---

[8]These text messages apparently contained Mr. Amos's advice to Ms. C. regarding the abuse and neglect proceeding.

[9]Mr. Amos admitted to making this telephone call, but stated that he simply told Ms. C.: "I just hope you have a good life. I wish you good luck with your children and I can't have any contact with you anymore."

[10]Mr. Amos testified below that it was his recollection that he told Mr. Plymale that he was going to "make it easy" for him by resigning his position and self-reporting his misconduct to the ODC. Regardless of the impetus, Mr. Plymale received Mr. Amos's resignation letter on June 30, 2011, and, by letter dated July 7, 2011, Mr. Amos self-reported his misconduct to the ODC through his counsel.

he might have kissed her cheek upon his departure, but could not specifically recall doing so. Although the ODC had been in contact with Ms. C., had mailed her a subpoena,[11] and anticipated that she would attend the hearing, she did not appear nor did she contact the ODC to advise that she would not be appearing.[12] Consequently, there was no affirmative evidence before the Hearing Panel regarding Ms. C.'s allegations of Mr. Amos's sexual overtures, other than Mr. Amos's denials of the same.[13]

---

[11]Under Rule 3.8(a) of the Rules of Lawyer Disciplinary Procedure, "[t]he failure of any person without adequate excuse to obey a subpoena . . . of a Hearing Panel Subcommittee shall constitute contempt of the [Lawyer Disciplinary] Board." This Rule also provides that the service of a subpoena is to be accomplished in accordance with the West Virginia Rules of Civil Procedure. The record is unclear as to whether Ms. C. was served with the ODC's subpoena in accordance with these Rules of Civil Procedure. There is nothing in the record to indicate any effort to hold Ms. C. in contempt for her failure to appear for this hearing.

[12]At the time of the disciplinary hearing, the child abuse and neglect proceeding had concluded with Ms. C. voluntarily relinquishing her parental rights to her children, as did their respective fathers.

[13]The other witnesses testifying at this hearing were Prosecutor Plymale, Judge Pratt, DHHR case worker Christy Wright, and DHHR Child Protective Services Supervisor Natalie Murphy. When disciplinary counsel asked these witnesses what Ms. C. had said about her contact with Mr. Amos, the Hearing Panel sustained the hearsay objections of Mr. Amos's counsel. When Ms. C. never appeared for the hearing, the ODC requested additional time to locate Ms. C. The Hearing Panel gave the ODC seven days to file a motion to reopen, cautioning that good cause would have to be demonstrated before it would reopen the record to permit the testimony of Ms. C. On May 13, 2013, the ODC filed a motion to reopen stating that Ms. C. did not appear for the hearing because she feared she would lose her employment but that she was willing to testify if arrangements were made with her employer. The Hearing Panel denied the ODC's motion to reopen finding that good cause had not been shown.

6

Thereafter, the parties submitted a Joint Stipulated Findings of Fact, Conclusions of Law and Recommended Sanctions to the Hearing Panel in which they recommended, *inter alia*, that Mr. Amos's law license be suspended for seventy-five days with an automatic reinstatement of his license at the conclusion of the seventy-five-day suspension.

On January 23, 2014, the Hearing Panel filed its Findings of Fact, Conclusions of Law and Recommended Discipline with this Court in which it adopted many of the stipulations and recommendations of the parties. The Hearing Panel found that Mr. Amos had "engaged in inappropriate conduct with a represented Respondent woman [Ms. C.] in an abuse and neglect matter to which he was the assigned Assistant Prosecutor and repeatedly communicated with this represented party outside the presence of counsel and without the permission of her counsel about the case." Based on these findings, the Hearing Panel concluded that Mr. Amos had violated the Rules of Professional conduct, specifically Rule 1.7(b) (conflict of interest),[14] Rule 4.2 (communication with a person represented by counsel),[15] and Rule 8.4(d) (conduct prejudicial to the administration of justice).[16]

---

[14]*See supra* note 1.

[15]Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

[16]*See supra* note 2.

7

In proceeding to consider the appropriate sanctions for these violations, the Hearing Panel considered the factors set forth in Rule 3.16 of the Rules of Lawyer Disciplinary Procedure, which states that

> [i]n imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

In applying these factors, the Hearing Panel found that the evidence established by clear and convincing proof that Mr. Amos violated duties owed to the public, the legal system, and the legal profession, all of which he had candidly admitted; that Mr. Amos admitted that he had acted intentionally and knowingly; and, that while there was no actual harm or prejudice to Ms. C., the "potential for injury to her, to the public, and to the administration of justice . . . was significant[,]" but had been minimized by Mr. Amos's self-reporting to the ODC and by his resignation as assistant prosecutor. In addressing the fourth factor, the Hearing Panel found that there were both mitigating and aggravating factors to be considered.

Regarding the aggravating factors, the Hearing Panel found that Mr. Amos was in a position of authority as an assistant prosecutor at the time of his misconduct, which required it to apply a heightened level of scrutiny. It further found that Ms. C.'s vulnerability was great given that Mr. Amos was the assistant prosecutor assigned to her abuse and neglect

8

case. The Hearing Panel also concluded that Mr. Amos engaged in multiple offenses of misconduct involving Ms. C. through his continuing communications with her following their first social encounter. Lastly, the Hearing Panel noted Mr. Amos's substantial experience in the practice of law.

Turning to the mitigating factors, the Hearing Panel noted the lack of a prior disciplinary record involving Mr. Amos; his cooperation with disciplinary counsel; his good reputation at the time of the offense; his extensive volunteer work in his community; his timely good faith effort to rectify the consequences of his misconduct by removing himself from the abuse and neglect case prior to any further hearing and by reporting his misconduct to both Judge Pratt and Prosecutor Plymale; his affirmative conduct in seeking counseling from a mental health provider; his resignation as an assistant prosecutor; his demonstrated remorse for his conduct; and his demonstrated competent and exemplary service in the handling of abuse and neglect matters during his seventeen years of service as an assistant prosecutor.

Upon its consideration of the above, the Hearing Panel concluded that the mitigating factors outweighed the aggravating factors. Based on this finding, the Hearing Panel recommended that a public reprimand be issued against Mr. Amos instead of the seventy-five-day suspension that the parties had jointly proposed. As an additional sanction, the Hearing Panel also recommended that Mr. Amos be prohibited from participating in

abuse and neglect proceedings in any capacity, other that as a guardian ad litem, for a period of at least one year. The balance of the parties' jointly proposed sanctions have also been recommended by the Hearing Panel: that Mr. Amos comply with his duties to notify his clients of his suspension as expressed in Rule 3.28 of the Rules of Disciplinary Procedure;[17] that he continue with his mental health counseling for a period of at least one year and provide proof of the same to the ODC; and that he pay the costs of the disciplinary proceeding pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.[18]

On January 23, 2014, following receipt of the Hearing Panel's findings and recommendation, this Court entered an order stating that it did "not concur with the

---

[17]This recommended sanction was clearly unintended by the Hearing Panel since it recommended a public reprimand—not a suspension. Under Rule 3.28, only lawyers who are disbarred or suspended must send such notices.

[18]Rule 3.15 of the Rules of Lawyer Disciplinary Procedure provides, in part, that

> [a] Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

recommended disposition." A briefing schedule was established, and oral argument was scheduled.

The parties have filed their respective briefs. The ODC recounts the Hearing Panel's rationale for recommending a sanction different from the one jointly proposed by the parties and asks this Court to adopt the Hearing Panel's recommendation given the "wealth of mitigating factors." The ODC notes the absence of any criminal charges against Mr. Amos and the absence of a pattern of misconduct involving any other victims. The ODC highlights that Mr. Amos denied propositioning Ms. C. for sexual activity for lenience in her abuse and neglect matter, and denied instructing Ms. C. to not cooperate in any investigation concerning his misconduct. The ODC states that while Mr. Amos's conduct was egregious, based on all of the evidence presented, including Judge Pratt's testimony that he considered this matter to be an aberration in Mr. Amos's behavior, the Hearing Panel's recommendation should be accepted by this Court as it is not inconsistent with the sanctions imposed in *Lawyer Disciplinary Bd. v. Artimez*, 208 W.Va. 288, 540 S.E.2d 156 (2000), and *Lawyer Disciplinary Bd. v. Chittum*, 225 W.Va. 83, 689 S.E.2d 811 (2010).[19]

Mr. Amos asserts that he acknowledged and continues to acknowledge that his misconduct and actions were an abuse of his position as an assistant prosecuting attorney.

---

[19]We find these cases to be unpersuasive as they did not involve lawyers who were in public office.

11

Mr. Amos accepts the Hearing Panel's findings concerning the aggravating and mitigating factors, and he urges this Court to adopt the Hearing Panel's recommended sanctions.

## II. Standard of Review

The sole issue before this Court is the appropriate sanction for Mr. Amos's violations of the Rules 1.7(b), Rule 4.2, and Rule 8.4(d) of the Rules of Professional Conduct. The standard for review in lawyer disciplinary proceedings is well-settled:

> A *de novo* standard applies to a review of the adjudicatory record made for the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's finding of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). However, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028 (1985). With these principles in mind, we proceed to consider the Hearing Panel's recommended sanctions.

12

## III. Discussion

The parties' joint stipulation submitted to the Hearing Panel includes Mr. Amos's acknowledgment that he "violated duties owed to the public, the legal system, and the legal profession[,]" and he does not challenge the Hearing Panel's conclusion that he violated Rules 1.7(b), 4.2, and 8.4(d) of the Rules of Professional Conduct. Thus, in considering the appropriate sanction[20] to be imposed in this matter, like the Hearing Panel, we consider the mitigating as well as the aggravating circumstances.

"Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). For guidance, we look to the mitigating factors that may be considered as set forth in *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003):

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation;

---

[20]*See supra* n.18.

(11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.*, syl. pt. 3. In consideration of these factors, we agree that there are several mitigating factors that inure to Mr. Amos's benefit, including his lack of a prior disciplinary record; his cooperation with disciplinary counsel; his timely good faith effort to rectify the consequences of his misconduct; and his demonstrated remorse for his misconduct. We must also take into consideration, however, the aggravating factors.

As we have previously explained, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). Here, the Hearing Panel addressed the aggravating factors, including Ms. C.'s significant vulnerability given that Mr. Amos's position as the assistant prosecutor assigned to her child abuse and neglect case, as well as Mr. Amos's repeated misconduct through his continuing communication with Ms. C. after their first social encounter.

We agree with the Hearing Panel that Ms. C.'s vulnerability in this matter was a significant aggravating factor. As the respondent parent in the abuse and neglect proceeding, Ms. C. may have felt compelled to accept Mr. Amos's invitation to join his table for drinks and to visit a strip club either fearing that if she did not, her position in the

14

proceeding would somehow be harmed, or believing that her acceptance would lead to a favorable outcome in the proceeding.[21] Thus, even setting aside Mr. Amos's unethical conduct in communicating with a represented party outside the presence of the party's counsel, he should never have placed Ms. C. in the vulnerable position of deciding whether to accept or reject the social invitation of the assistant prosecutor in her abuse and neglect case.

Additionally, we also consider other highly egregious conduct to be an aggravating factor: Mr. Amos taking Ms. C. home after their visit to a strip club, going into her home, asking to see her children's bedrooms, and then doing so. In light of Mr. Amos's extensive experience in abuse and neglect cases, he should have been keenly aware of his role as an assistant prosecutor in such proceedings, which certainly did not extend to conducting in-home evaluations of the bedrooms in a parent's home.

We have previously explained that

---

[21]Although Mr. Amos testified that all of his conversations and communications with Ms. C. involved giving her advice on how she could improve her circumstances in the abuse and neglect proceeding, even if such communications had been ethical, which they were not, we cannot fathom how Mr. Amos, with seventeen years experience in such matters, would believe that taking Ms. C. to a strip club would benefit her. In fact, a respondent parent visiting a strip club is the type of unfavorable parental conduct this Court would expect to see reported in a child protective services worker's update report in an abuse and neglect proceeding.

15

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt, 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

We are also mindful that "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." Syl. Pt. 3, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).

This Court has previously considered disciplinary measures for attorneys in public office and, in those matters, we have emphasized the importance of the community's trust in the public office held.[22] Moreover, we note that Standard 5.22 of the ABA *Model Standards for Imposing Lawyer Sanctions* provides that a "[s]uspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity

---

[22]*See also Committee on Legal Ethics of the West Virginia State Bar v. White*, 189 W.Va. 135, 428 S.E.2d 556 (1993) (suspending law license of prosecuting attorney who pled guilty in federal court to possession of cocaine marijuana and percocet); *Committee on Legal Ethics of the West Virginia State Bar v. Boettner*, 188 W.Va. 1, 422 S.E.2d 478 (1992) (suspending license of lawyer who was state senator and who pled guilty to evading payment of federal income taxes); *Committee on Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989) (suspending license of prosecuting attorney and former mayor who pled guilty to possession of cocaine).

of the legal process." Guided by these considerations, and balancing the mitigating and aggravating factors in this matter, including the tremendous potential for injury to Ms. C., to the public, and to the administration of justice engendered by Mr. Amos's misconduct, we reject the Hearing Panel's recommended sanctions in two respects.

First, we find that the Hearing Panel's recommendation of a public reprimand to be wholly inadequate. Mr. Amos admitted that he acted intentionally and knowingly in this matter. Further, his ethical violations occurred while he was serving as an assistant prosecuting attorney, which is an additional aggravating factor that must be taken into consideration. *See Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003) (finding that lawyer's violation of Rules of Professional Conduct while holding public office was an aggravating factor). Accordingly, we find that the discipline proposed by Mr. Amos and the ODC—a seventy-five-day suspension with automatic reinstatement to the practice of law at the conclusion of those seventy-five days—to be the appropriate sanction.

Second, we find the Hearing Panel's recommended sanction prohibiting Mr. Amos from engaging in abuse and neglect proceedings for one year, yet allowing him to serve as a guardian ad litem, to be insufficient. A lawyer serving as a guardian ad litem in an abuse and neglect proceeding may legitimately need to visit the child's home in fulfilling his or her role of protecting the child's interests. Under the facts of the instant disciplinary proceeding, providing Mr. Amos with an imprimatur to go into a parent's home seems

17

particularly inappropriate.  Thus, we find that Mr. Amos should be prohibited from serving in *any capacity* in an abuse and neglect proceeding for one year.  We agree with the balance of the Hearing Panel's recommended sanctions.

## IV.  Conclusion

For the foregoing reasons, we adopt, as moulded, the Hearing Panel's recommendations and impose the following sanctions: that Mr. Amos's law license is suspended for seventy-five days with an automatic reinstatement to the practice of law at the conclusion of the seventy-five-day suspension; that Mr. Amos is prohibited from engaging in child abuse and neglect proceedings in any capacity for one year; that  Mr. Amos continue counseling with a mental health provider for a period of at least one year and provide proof of the same to the ODC; and that Mr. Amos pay the costs of this disciplinary proceeding.

License Suspended with Additional Sanctions.